# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| RION T. MCCONNELL, | : | |
| Plaintiff, | : | Case No. 3:13cv00034 |
| vs. | : | District Judge Timothy S. Black<br>Chief Magistrate Judge Sharon L. Ovington |
| NAPHCARE, INC., *et al.*, | : | |
| Defendants. | : | |

# REPORT AND RECOMMENDATIONS[1]

## I. Introduction

Plaintiff Rion T. MacConnell was a prisoner in the Montgomery County, Ohio Jail from December 12, 2012 until his release on June 9, 2013. He is presently a resident of Dayton, Ohio. He brings this case *pro se* under 42 U.S.C. §1983 asserting claims against multiple Defendants, including (in part) the Sheriff of Montgomery County and Naphcare, Inc. He maintains that Defendants violated his constitutional rights to receive medical care and to have access to legal materials during his incarceration.

The case is presently pending upon Defendant Montgomery County Sheriff's Motion to Dismiss (Doc. #26), Plaintiff's Response (Doc. #40), the Sheriff's Supplemental Memorandum, and the record as a whole.

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

The Sheriff contends that dismissal of Plaintiff's Complaint is warranted under Fed. R. Civ. P. 12(b)(6) because Plaintiff has failed to allege facts plausibly stating a claim for relief against him. The Sheriff also contends the doctrine of qualified immunity shields him from Plaintiff's claims.

## II. Plaintiff's Complaint

In his Complaint, Plaintiff alleges that from October to December 2012 he was at the Miami Valley Hospital under the care of Dr. Barde. Plaintiff states that he "had/has colon/GI cancer after acute blood test showed blood in stool and pain." (Doc. #9, PageID at 61). During his booking in the County Jail on December 12, 2012, Plaintiff reported his bleeding and pain to jail staff and was given a male sanitary pad to wear. A male medic allegedly told him "to prove his colon was bleeding." *Id*.

From the date of his booking into the Jail until January 16, 2013, Plaintiff was allegedly provided no medical care or testing. He turned to Jail's grievance line with no success in getting treatment. He then sent a letter to "Sheriff HQ/Capt. Flanders/Mrs. Landis/Wilson." *Id*., pageID at 62. "Upon the letter, [he] was taken to medical ...." *Id*. He was then told by a "female, LPN Jane Doe/or a mail RN...," *id*., named Tony, that they did not have all his records yet but did have records from Dr. Barde. Plaintiff alleges that he was also told to stop sending Kites to them. He further alleges that when he asked for certain testing, he was not given either testing or an exam.

Plaintiff alleges that he informed Naphcare, Inc.[2] by Kite about testing and treatment dates that Miami Valley Hospital had set for him. He also informed Naphcare, Inc. that the Miami Valley Hospital was willing to reset the dates "with the Jail staff." *Id*. But, as of the date Plaintiff filed his Amended Complaint (February 22, 2013), he had only received "one blood draw over 19 days ago, with no blood counts or follow-up trips to medical unit, under Naphcare, Inc. under Sheriff [sic] and Naphcare and 'Does.'" *Id.*

Plaintiff further claims that he has continued to seek treatment, but he does not describe any further interactions with Jail staff. Attached to his Amended Complaint are several affidavits of other prisoners who generally assert that Plaintiff has complained to staff and sought treatment. The affidavits, however, do not identify any medical staff member by name or identifies any specific interaction.

Plaintiff's Amended Complaint also asserts that his civil rights have been violated because he has allegedly been denied access "to any Federal reporter/and other case cites...," while in the Montgomery County Jail. (Doc. # 9, Page ID at 63). He was told by various corrections officers that there was no law library in the Jail and only one State law book. Plaintiff sent kites to certain corrections officers and was told "no books ...." *Id*. He also used the grievance number to seek law books but received "no feed-back or no law books." *Id.*, PageID at 64.

---

[2] Naphcare, Inc. provides medical services at the Montgomery County Jail. (Doc. #26, PageID at 126).

3

**III.     Motions to Dismiss and 42 U.S.C. § 1983**

To determine whether a *pro se* Complaint states a claim upon which relief can be granted, the Court accepts the factual allegations as true and construes the Complaint liberally in the plaintiff's favor. *See Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011); *see also Scott v. Ambani*, 577 F.3d 642, 646 (6th Cir. 2009). "[T]o survive a motion to dismiss a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting in part *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1974, 1965 (2007)). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct.1937, 1949 (2009). "A pleading that offers 'labels and conclusions' ... will not do.' Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id*. (internal citations omitted). Deciding whether a complaint states a claim for relief that is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*, 556 U.S. at 663-64, 129 S.Ct. at 1940.

To state a plausible claim for relief under §1983, a plaintiff must allege facts sufficient to show "that a person acting under the color of state law deprived him [or her] of a right secured by the Constitution or laws of the United States." *Everson v. Leis*, 556

F.3d 484, 493 (6th Cir. 2009).

## IV. Discussion

### A. Plaintiff's Eighth Amendment Claim

"The Eighth Amendment forbids prison officials from 'unnecessarily and wantonly inflicting pain' on an inmate by acting with 'deliberate indifference' toward the inmate's serious medical needs. Pretrial detainees are analogously protected under the Due Process Clause of the Fourteenth Amendment. Whether a convicted prisoner or a pretrial detainee, deliberate indifference to one's need for medical attention suffices for a claim under 42 U.S.C. § 1983." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004) (internal citations omitted).

Plaintiff's Amended Complaint does not allege sufficient facts concerning the Sheriff's personal conduct to state a plausible claim that he violated Plaintiff's Eighth Amendment rights by being deliberately indifferent to his serious medical needs. At best for Plaintiff, he alleges that he sent a grievance by pre-paid mail to Sheriff headquarters – specifically, "Sheriff HQ/Capt. Flanders/Mrs. Landis/Wilson." (Doc. #9, PageID at 62). But he does not identify facts showing that the Sheriff personally took any particular action in response to his grievance, let alone a response that deprived him of treatment for his serious medical needs. Instead, Plaintiff apparently acknowledges that "Upon the letter, he was taken to Medical, on the 1st Floor ...." *Id*. The fact that he was taken to Medical after he sent the letter to the Sheriff may be coincidental or perhaps someone in the Sheriff's headquarters – perhaps Captain Flanders – instructed Jail personnel to take

5

Plaintiff to Medical. Either way, these circumstances fail to show that the Sheriff personally engaged in conduct that violated Plaintiff's Eighth Amendment rights.

To the extent Plaintiff seeks to hold the Sheriff liable due to his supervisory authority over Jail or headquarters personnel, his Complaint fails to state a plausible §1983 claim. The Sheriff cannot be held liable under §1983 by dint of respondeat superior; Plaintiff must instead allege sufficient facts showing that the Sheriff "encouraged the specific incidence of misconduct or in some other way directly participated in it." *Taylor v. Mich. Dep't of Corr.,* 69 F.3d 76, 80-81 (6th Cir.1995) (citation omitted). Plaintiff's Amended Complaint simply alleges no such personal involvement by the Sheriff. Plaintiff alleges only that various unnamed Jail staff and corrections officers (and Nurse Dressler on only one occasion) denied him certain medical testing and treatment. Nothing in the Complaint gives rise to an inference that the Sheriff directly encouraged, or otherwise participated in, these alleged denials of medical care.

Accordingly, Plaintiff has failed to state a plausible claim under the Eighth Amendment and §1983 against the Sheriff.

      B.     **Plaintiff's Access-to-Courts Claim**

Plaintiff maintains that his constitutional rights were violated by Defendants' denial of access to legal materials – i.e., "to any Federal court reporter/and other case cites to ensure he could get his medical care and protect his rights to a law library." (Doc. #9, PageID at 63).

"'[T]he fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law.'" *Lewis v. Casey*, 518 U.S. 343, 346, 116 S.Ct. 2174, 2177, 135 L. Ed. 2d 606 (1996) (quoting *Bounds v. Smith,* 430 U.S. 817, 828, 97 S.Ct. 1491, 1498 (1977)). This fundamental constitutional right, however, does not include the specific "right to a law library or to legal assistance." *Lewis*, 518 U.S. at 350, 116 S.Ct. at 2179 (discussing *Bounds,* 430 U.S. 817, 828, 97 S.Ct. 1491, 1492-93). "[P]rison law libraries and legal assistance programs are not ends in themselves, but only the means for ensuring 'a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.'" *Lewis*, 518 U.S. at 351 116 S.Ct. at  (quoting, in part, *Bounds,* 430 U.S. at 825, 97 S.Ct. at 1496). Consequently, to the extent Plaintiff seeks to hold the Sheriff liable for denying him access to a law library, he fails to state a plausible §1983 claim. *See id*.

Additionally, to demonstrate a violation of his right of access to courts, Plaintiff must allege facts sufficient to show that he suffered a "relevant actual injury ...." *Lewis*, 518 U.S. at 351, 116 S.Ct. at 2180; *see Thomas v. Rochell*, 47 Fed. App'x 315, 317-18 (6th Cir. 2002) (failure to plead facts showing actual injury warranted *sua sponte* dismissal of access-to-courts claim). "Examples of actual prejudice [or injury] include having a case dismissed, being unable to file a complaint, and missing a court-imposed deadline." *Jackson v. Gill*, 92 Fed. App'x 171, 173 (6th Cir. 2004) (citing *Lewis*, 518 U.S.

at 351 and *Walker v. Mintzes*, 771 F.2d 920, 932 (6th Cir. 1985)).

Plaintiff's Amended Complaint does not contain facts sufficient to show an actual injury caused by a denial of his right of access to the courts. Plaintiff alleges harm through his allegation that he could not "get federal case law/laws and cites to ensure his medical care and ... protect his rights to a law library." (Doc. #9, PageId at 63). He thus bases his alleged injury on the instant case. But his allegations, accepted as true, do not indicate that he suffered any interference with his ability to file or litigate this case or, for that matter, any other case. The record of this case shows that he filed a meritorious motion to proceed *in forma pauperis* and that his original Complaint survived the Court's initial review under 28 U.S.C. §1915. He was then able to complete the necessary paperwork to obtain service of summons on Defendants, and he has filed multiple pleadings, many motions, and two supplemental memoranda. Given this activity and accepting as true the allegations of Plaintiff's Amended Complaint, he has not identified facts or circumstances showing he suffered a relevant actual injury due to interference with his right of access to the courts. His right-of-access claim therefore fails to constitute a plausible §1983 claim for relief against the Sheriff. *See Rochell*, 47 Fed. App'x at 317-18.

### C.     Qualified Immunity

The Sheriff contends that qualified immunity shields him from liability on Plaintiff's §1983 claims.

"[G]overnment officials performing discretionary functions generally are shielded

from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738 (1982). To overcome an official's assertion of qualified immunity, a plaintiff must allege facts, when accepted as true, sufficient to (1) "'show the [official]'s conduct violated a constitutional right ...,'" and (2) the constitutional right was clearly established at the time of the alleged violation. *Pearson v. Callahan*, 555 U.S. 223, 232, 129 S.Ct. 808, 816 (2009) (quoting *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 2156 (2001); *see Ashcroft v. al-Kidd*, __U.S.__, 131 S. Ct. 2074, 2080, 179 L. Ed. 2d 1149 (2011). While it is often appropriate to address the qualified immunity analysis by considering these two steps in sequence, it is not mandatory. *Pearson*, 555 U.S. at 236, 129 S.Ct at 818.

In the present case, for the reasons discussed above, Plaintiff has failed to allege facts sufficient to raise a plausible claim that the Sheriff violated his clearly established constitutional rights. Qualified immunity therefore shields the Sheriff from Plaintiff's claims. *See Leis*, 556 F.3d at 496 .

**IT IS THEREFORE RECOMMENDED THAT:**

Defendant Montgomery County Sheriff's Motion to Dismiss (Doc. #26) be GRANTED.


September 10, 2013                              s/Sharon L. Ovington
                                                Sharon L. Ovington
                                         Chief United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).