# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| RION T. MACCONNELL, | : | |
| Plaintiff, | : | Case No.  3:13cv00034 |
| vs. | : | District Judge Timothy S. Black |
| | | Chief Magistrate Judge Sharon L. Ovington |
| NAPHCARE, INC., *et al.*, | : | |
| Defendants. | : | |

## THIRD REPORT AND RECOMMENDATIONS[1]

### I.     Introduction

Plaintiff Rion T. MacConnell brings this case *pro se* under 42 U.S.C. §1983 claiming that during his detention in the Montgomery County, Ohio Jail, Defendants Naphcare, Inc., Anthony Dressler, R.N., and others violated his right to receive medical testing and treatment in violation of the Eighth and Fourteenth Amendments to the Constitution. Plaintiff was a prisoner in the Montgomery County Jail from December 12, 2012 until his release on June 9, 2013. He is presently a resident of Dayton, Ohio. Defendant Naphcare acknowledges that it "provides in-house medical services at the Montgomery County jail ...." (Doc. #27, PageID at 141).

The case is presently pending upon Defendant Naphcare and Dressler's

---

[1]  Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

(Defendants') Motion to Dismiss (Doc. #27), Plaintiff's Response (Doc. #40),

Defendants' Reply (Doc. #44), and the record as a whole.

This Report incorporates by reference the description of Plaintiff's pleadings and claims set forth in the previously filed Reports and Recommendations. (Doc. #s 46, 47). To give context to the presently pending Motion and Plaintiff's opposition to it, some of Plaintiff's allegations require revisiting.

## II.    Plaintiff's Allegations

Plaintiff alleges that from the date of his booking into the Montgomery County Jail ("the Jail") until January 16, 2013, he was not given any medical care or testing even though he repeatedly asked for it because of bleeding and pain he was experiencing. Plaintiff states that he "had/has colon/GI cancer after acute blood test showed blood in stool and pain." (Doc. #9, PageID at 61). During his booking into the County Jail, Plaintiff reported his bleeding, pain, "history of Hepatitis and world travels" to Jail staff and was given a male sanitary pad to wear. *Id*. A male medic allegedly told him "to prove his colon was bleeding." *Id*. Plaintiff asserts that he proved to a medic on third watch that he was bleeding, and the medic "said, 'we know you are bleeding, shut-up the girls bleed[] all the time [sic] don't act like those cry babies.'" *Id*., PageID at 62.

From the date of his booking into the Jail until January 16, 2013, Plaintiff was allegedly provided no medical care or testing. Although he used the Jail's grievance line, this did not help him obtain treatment. He then sent a letter to the Montgomery County Sheriff's headquarters. He alleges:

2

> Upon the letter, [he] was taken to medical, on 1st floor near his housing unit..., to be told not all records were in, but C. Barde, M.D. [sic] were and to stop sending them "Kites." Plaintiff asked for his stomach or stool/acute blood [sic] to be tested ... by the female, LPN Jane Doe/or male RN, that would only say his name was Tony[,] now listed as Tony Doe..., no testing was done or exam done by either Doe's [sic] listed ....

(Doc. #9, PageID at 62). Plaintiff explains in his Complaint that before his detention in the Jail, he saw Dr. Barde at the Miami Valley Hospital. He was "under the care of Dr. C. Barde after EDG/colonscope that his colon was bleeding ...." (Doc. #3, PageID at 38).

Plaintiff allegedly informed Defendant Naphcare by Kite about testing and treatment dates that Miami Valley Hospital had set for him. He also informed Defendant Naphcare that the Miami Valley Hospital was willing to reset the dates "with the Jail staff." *Id*. But, as of February 22, 2013, the date Plaintiff filed his Amended Complaint in this case, he had only received "one blood draw over 19 days ago, with no blood counts or follow-up trips to medical unit, under Naphcare, Inc. ... and Naphcare and 'Does.'" *Id*.

Plaintiff further asserts that he continued to seek medical treatment, but he does not describe any further interactions he had with Jail staff. Attached to his Amended Complaint are several affidavits of other prisoners who generally assert that Plaintiff has complained to staff and sought treatment. The affidavits, however, do not identify any medical staff member by name or any specific interaction.

## III.  Discussion

### A.  Motions to Dismiss

Defendants Naphcare and Dressler contends that Plaintiff has failed to plead

3

plausible claims against them. They thus seek dismissal of Plaintiff's claims under Fed. R. Civ. P. 12(b)(6).

To overcome a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "(1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting in part *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1974, 1965 (2007)). Facial plausibility is present if the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct.1937, 1949 (2009). "A pleading that offers 'labels and conclusions' ... will not do.' Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id*. (internal citations omitted). Deciding whether a Complaint states a claim for relief that is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*, 556 U.S. at 663-64, 129 S.Ct. at 1940.

## B.    Defendants' Motion to Dismiss

Plaintiff's constitutional claim against Defendants arises under 42 U.S.C. §1983, which provides in pertinent part:

> Every person who, under color of any [state law] ... subjects, or causes to be
> subjected, any citizen of the United States ... to the deprivation of any
> rights, privileges, or immunities secured by the Constitution..., shall be

4

liable to the party injured.

Plaintiff's allegations implicate his rights protected under the Eighth and Fourteenth Amendments. "The Eighth Amendment forbids prison officials from 'unnecessarily and wantonly inflicting pain' on an inmate by acting with 'deliberate indifference' toward the inmate's serious medical needs. Pretrial detainees are analogously protected under the Due Process Clause of the Fourteenth Amendment. Whether a convicted prisoner or a pretrial detainee, deliberate indifference to one's need for medical attention suffices for a claim under 42 U.S.C. §1983." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004) (internal citations omitted).

Defendant Naphcare contends that dismissal of Plaintiff's §1983 claim is warranted because he fails to allege that a Naphcare custom, practice, or policy caused his injuries. This is correct.

Defendant Naphcare's responsibility for providing "in-house medical services at the Montgomery County jail...," Doc. #27, PageID at 141, is sufficient to trigger its potential §1983 liability as a state actor. *See Street v. Corrections Corp. of Am.,* 102 F.3d 810, 817-18 (1996); *see also Starcher v. Corr. Med. Sys., Inc.,* 7 Fed. App'x 459, 464-65 (6th Cir. 2001). However, Defendant Naphcare's potential §1983 liability must be based on more than respondeat superior or vicarious liability for the acts of its employees, as explained in *Monell v. Department of Social Serv.,* 436 U.S. 658, 692-93, 98 S.Ct. 2018, 2036-37 (1978). Even though "'*Monell* involved a municipal corporation, ... every circuit to consider the issue has extended the holding to private corporations as well.'" *Street*,

5

102 F.3d at 818 (quoting *Harvey v. Harvey*, 949 F.2d 1127, 1129-30 (11th Cir. 1992)).

Under *Monell*, "[a] plaintiff may only hold a local government entity liable under § 1983 for the entity's own wrongdoing. A local government entity violates §1983 where its official policy or custom actually serves to deprive an individual of his or her constitutional rights...." *Gregory v. City of Louisville*, 444 F.3d 725, 752 (6th Cir. 2006). "The local government's policy or custom 'must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983.'" *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994) (quoting, in part, *Polk County v. Dodson,* 454 U.S. 312, 326, 102 S.Ct. 445, 454 (1981) (quoting, in turn, *Monell,* 436 U.S. at 694, 98 S.Ct. at 2037-38)); *see also Miller v. Sanilac Cnty.*, 606 F.3d 240, 255 (6th Cir. 2010).

Accepting Plaintiff's factual allegations as true and liberally construing his *pro se* pleadings in his favor, *see Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011), he has not stated a plausible §1983 claim against Defendant Naphcare. He does not allege, as §1983 requires, *Gregory*, 444 F.3d at 752, that Naphcare had a policy or custom of deliberate indifference to his (or detainees') serious medical needs. The pleadings at most claim that Naphcare employees – Defendant Dressler and unnamed Jane and John Does – violated Plaintiff's constitutional rights. This is insufficient to show that Naphcare itself violated his constitutional rights because such violations cannot arise from vicarious liability or respondeat superior. *See Street,* 102 F.3d at 817-18; *see also Starcher,* 7 Fed. App'x at 464-65. The pleadings likewise do not allege sufficiently specific facts showing

6

that Naphcare employees acted pursuant to a particular Naphcare policy or custom and that such policy-or-custom driven action violated Plaintiff's constitutional rights. Plaintiff's pleadings thus fail to reveal that a Naphcare policy or custom was the moving force behind the alleged violation of his constitutional rights. For each of these reasons, Defendant Naphcare's Motion to Dismiss is well taken. *See Street,* 102 F.3d at 817-18; *see also Hanner v. City of Dearborn Heights*, 450 Fed. App'x 440, 445 (6th Cir. 2011) (Rule 12(b)(6) dismissal warranted where the plaintiff "failed to allege the existence of a municipal custom or policy that was the moving force behind the alleged deprivation of his constitutional rights."); *Barnett v. Luttrell*, 414 Fed. App'x 784, 790 (6th Cir. 2011) (affirming *sua sponte* dismissal of Defendants Shelby County and Corrections Medical Services due to absence of "alleged facts indicating a particular municipal policy or custom of deliberate indifference....").

Accordingly, Defendant Naphcare's Motion to Dismiss is well taken.

* * *

Like Defendant Naphcare, Defendant Dressler seeks dismissal of Plaintiff's claim under Rule 12(b)(6). According to Defendant Dressler, the pleadings do not allege facts sufficient to show that he had the sufficiently culpable state of mind – *i.e.*, that he was deliberately indifferent to Plaintiff's serious medical needs.

> "Pretrial detainees have a right under the Fourteenth Amendment to adequate medical treatment, a right that is analogous to the right of prisoners under the Eighth Amendment." *Estate of Carter v. City of Detroit,* 408 F.3d 305, 311 (6th Cir. 2005) (citing *Watkins v. City of Battle Creek,* 273 F.3d 682, 685-86 (6th Cir. 2001)). "A cause of action under § 1983 for

7

> failure to provide adequate medical treatment requires a showing that the
> defendants acted with deliberate indifference to the serious medical needs
> of the pretrial detainee." *Id.* (internal citations and quotations omitted).
> Deliberate indifference requires that the defendants "knew of and
> disregarded a substantial risk of serious harm to [the plaintiff's] health and
> safety." *Watkins,* 273 F.3d at 686 (citing *Farmer v. Brennan,* 511 U.S. 825,
> 835-37, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)).

*Spears v. Ruth*, 589 F.3d 249, 254 (6th Cir. 2009).

"A claim of deliberate indifference under the Eighth Amendment has both an

objective and a subjective component. The objective component requires the existence of

a sufficiently serious medical need.*" Broyles v. Corr. Med. Servs., Inc*., 478 Fed. App'x

971, 975 (6th Cir. 2012) (citing *Turner v. City of Taylor,* 412 F.3d 629, 646 (6th Cir.

2005)).

Defendant Dressler assumes "Plaintiff has a serious medical need." (Doc. #27,

PageID at 144). Since this assumption favors Plaintiff, the analysis turns to whether he

has pled sufficient facts that, when accepted as true, satisfy the subjective component of

the deliberate-indifference requirement.

> To satisfy the subjective component, the defendant must possess a
> "sufficiently culpable state of mind," rising above negligence or even gross
> negligence and being 'tantamount to intent to punish. Put another way, '[a]
> prison official acts with deliberate indifference if he knows of a substantial
> risk to an inmate's health, yet recklessly disregards the risk by failing to
> take reasonable measures to abate it.'

*Broyles*, 478 Fed. App'x at 975 (citing, in part, *Horn v. Madison Cnty. Fiscal Court,* 22

F.3d 653, 660 (6th Cir.1994) (other citations omitted); *see Farmer,* 511 U.S. at 836-37,

114 S.Ct. 1970).

8

The factual allegations in Plaintiff's pleadings do not support the inference that Defendant Dressler was deliberately indifferent to Plaintiff's serious medical needs. Plaintiff alleges that he "asked for his stomach or stool/acute blood [sic] to be tested ... by the female, LPN Jane Doe/or male RN, that would only say his name was Tony[,] now listed as Tony Doe ... [but] no testing was done or exam done by either Doe's [sic] listed" (Doc. #9, PageID at 62). Assuming in Plaintiff's favor that Tony Doe is Defendant Dressler (Anthony Dressler, RN), the just-quoted allegation is the only allegation specifically concerning Dressler in both the Complaint and the Amended Complaint. Although Plaintiff contends generally that jail personnel repeatedly failed to grant his many requests for medical tests and treatment, he only connects Defendant Dressler to a single denial of tests and treatment. Plaintiff's allegations about this one-time denial fail to develop sufficient facts to support the inference that Defendant Dressler knew about a substantial risk to Plaintiff's health but recklessly disregarded the substantial risk by failing to take reasonable measures to abate it. *See Broyles*, 478 Fed. App'x at 976 (6th Cir. 2012) (Complaint dismissed where it "contain[ed] no allegations that [nurse] Hamilton specifically knew Broyles faced a substantial risk of serious harm and disregarded that substantial risk by failing to take reasonable measures to abate it ....").

In addition, reading the pleadings as whole, there is nothing that would have alerted Defendant Dressler to the existence of a substantial risk to Plaintiff when Dressler saw Plaintiff on the one occasion Plaintiff describes, or that Dressler then disregarded such a risk. This is so even assuming Dressler knew that Plaintiff had been diagnosed

9

with colon cancer and was bleeding and in pain. Without more, which the pleadings lack, these allegations are merely "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (quoting, in part, *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955). If all Dressler knew about Plaintiff's symptoms was that he was bleeding and in pain, the most he knew was the <u>possibility</u> that Plaintiff faced a substantial risk to his health. The pleadings thus fail to heed *Iqbal*'s warning to all Complaint drafters: "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (quoting, in part, *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955).

Fully crediting Plaintiff's allegations, what Dressler did not know is telling: He did not know the extent of Plaintiff's bleeding or what level of pain Plaintiff was in. Adding the inference that Dressler knew about Plaintiff's report of a colon-cancer diagnosis, this diagnosis, without more, says nothing descriptive about the level of Plaintiff's bleeding and pain. The pleadings – at most – provide a factual basis for inferring that Plaintiff's bleeding and pain were caused by colon cancer. Yet, without more information, the presence of such causation raises only the possibility of serious bleeding or pain, rather than supporting the inference that Plaintiff was actually experiencing serious bleeding or pain that Defendant Dressler knew about and ignored Plaintiff's serious medical needs. "As the Supreme Court explained, 'where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it

has not 'show[n]' – 'that the pleader is entitled to relief.'" *Estate of Barney v. PNC Bank, Nat. Ass'n*, 714 F.3d 920, 924-25 (6th Cir. 2013) (quoting, in part, *Iqbal*, 556 U.S. at 679, 129 S.Ct. 1937)(other citation omitted).

In addition, Plaintiff acknowledged that he received treatment for his bleeding (he was given a sanitary pad) when he first reported it to jail staff. He also received medical testing on one occasion – a blood test in January or February 2013. This minimal treatment and testing points to the possibility of negligence rather than supporting a plausible claim that Defendant Dressler was deliberately indifferent to Plaintiff's serious medical needs. "When dealing with medical care for detainees, negligence does not state a cause of action under § 1983." *Weaver v. Shadoan*, 340 F.3d 398, 411 (6th Cir. 2003); *see Flanory v. Bonn*, 604 F.3d 249, 254 (6th Cir. 2010). And, where, as here, "'a prisoner alleges only that the medical care he received was inadequate, "federal courts are generally reluctant to second guess medical judgments.'" *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011) (quoting, in part, *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976)). Although medical treatment may be "'so woefully inadequate as to amount to no treatment at all,'" *Alspaugh,* 643 F.3d at 169 (quoting, in part, *Westlake*, 537 F.2d at 860 n.5), the conclusory nature of Plaintiff's allegations fails to reveal that the treatment he received was so woefully inadequate to constitute no treatment at all.

Lastly, Plaintiff seems to acknowledge the problems with his claims against the John and Jane Does. He states that he "is willing to stipulate to the fact that the ... LPNs, RNs, or other licensed professionals working within the Montgomery County Jail..., to

11

give the other defendants what they want to hear[,] could be dismissed ...." (Doc. #40, PageID). Regardless of whether or not he intended this statement as a stipulation to the dismissal of his claims against the unnamed John and Jane Does, the previously discussed reasons for concluding that the pleadings fail to state a plausible claim against Defendant Dressler lead to the same conclusion about Plaintiff's claim against the unnamed Jane and John Doe nurses. As result, dismissal of Plaintiff's claim against the Jane and John Doe nurses is warranted under Rule 12(b)(6).

Accordingly, Defendant Dressler's Motion to Dismiss is well taken. In the event that this Third Report and Recommendations along with the First and Second Reports and Recommendations are fully accepted, no claims would remain pending in this case.

## IT IS THEREFORE RECOMMENDED THAT:

1.  Defendants Naphcare, Inc. and Anthony Dressler, R.N's Motion to Dismiss (Doc. #27) be GRANTED;

2.  Plaintiff's claims against the unnamed Plaintiffs Jane and John Does be DISMISSED; and

3.  This case be terminated on the docket this Court, in the event this Report and Recommendations along with the two prior-filed Reports and Recommendations (Doc. #s 46, 47) are fully adopted.


September 17, 2013                                   s/Sharon L. Ovington
                                                    Sharon L. Ovington
                                          Chief United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).